IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. ARTIT CHANGYALEKET, (#R-13362), | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Case No. 07 C 1694 ) ) |
| TERRY MCCANN, Warden, Stateville Correctional Center, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Artit Changyaleket's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Changyaleket's habeas petition.[1]

## BACKGROUND

Changyaleket does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinions affirming the judgments of the Circuit Court of Cook County, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *see also Virsnieks v. Smith,* 521 F.3d 707, 714 (7th Cir. 2008). The Court thus adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Changyaleket,* No. 1-02-2112 (Ill.App.Ct. Oct. 29, 2003) (unpublished); *People v. Changyaleket,* 1-06-0056 (Ill.App.Ct. Jan. 31, 2007) (unpublished). The Court begins

---

[1] On November 25, 2008, the Executive Committee for the Northern District of Illinois reassigned Changyaleket's habeas petition to this Court pursuant to Rule 13 of the Internal Operating Procedures. (R. 41-1.)

with a recounting of the facts as determined by the Illinois Appellate Court. *See Easley v. Frey,* 433 F.3d 969, 970 (7th Cir. 2006).

I.  **Factual Background**

Petitioner Artit Changyaleket ("Changyaleket") was a dealer of the controlled substance ecstacy. On November 10, 2000, Changyaleket's apartment that he shared with his co-defendant Quang Nguyen ("Nguyen") and another individual was burglarized. After the burglary, about 200 ecstacy pills and approximately $6,000 in cash were missing. Changyaleket suspected that "Mikey" was responsible for the burglary because Mikey owed Changyaleket some money and was supposed to meet Changyaleket that night, but failed to show up. Also, Mikey knew where Changyaleket kept his drugs and money because Mikey had walked in on Changyaleket and Nguyen while they were conducting a drug sale.

Changyaleket and his friends then attempted to locate Mikey. Nguyen called a friend who lived in Elgin, Illinois and found out that Mikey was there. When Changyaleket, Nguyen, and others arrived at the friend's house in Elgin, Mikey was there, along with two other individuals Steve Lu ("Lu") and Vu Hoang ("Hoang"). About ten minutes after arriving, Changyaleket suggested that they get something to eat. Lu, Hoang, Nguyen, and Changyaleket went in Nguyen's car and after driving for a few minutes, Changyaleket pulled a gun and asked Lu and Hoang about the burglary. Lu and Hoang insisted that they did not know anything about the burglary. Changyaleket then told them that he was going to take them to a cornfield.

At trial, Lu testified that they pulled up to a cornfield after which Changyaleket put a gun to Hoang's head. Lu further testified that he could see that Hoang's hands were down by his side. Moreover, Lu testified that he and Hoang were trying to remain calm when all of a sudden

2

Lu heard a boom. He then saw Hoang take a gasp of air and slump down on the window. Blood was coming out of Hoang's head. Nguyen then began pulling Hoang's body out of the car while Changyaleket pushed Hoang out. After dumping the body in the cornfield, they drove off.

Lu testified that thereafter Nguyen drove to a store and Nguyen, Changyaleket, and Lu went inside to buy paper towels and Lysol. Lu testified that he did not run away because he feared for his life. On the way back to their friend's house in Elgin, Changyaleket cleaned the back seat. When they got back, Lu got out of the car to go home when Changyaleket asked him for his identification and cell phone number. Changyaleket then threatened to kill Lu and his family.

At trial, Nguyen testified that while he was driving, Changyaleket was waiving a gun back and forth and pointing it at Lu and Hoang demanding that they tell him what happened to his drugs and money. Nguyen further testified that Changyaleket told him to drive to a cornfield. Meanwhile, Changyaleket told Lu and Hoang that they better tell him about the burglary or one of them was going to die. In addition, Nguyen testified that he drove the car about fifty feet into a cornfield and stopped. Changyaleket then pointed the gun at Lu and told him that because he knew him, he would not kill him, but because he did not know Hoang, he would have no problem killing him if they did not tell him what he wanted to hear. Nguyen further testified that Changyaleket then pointed the gun at Hoang's head and said that they had until he counted to three to tell him about the burglary or Hoang would die. Again, Lu and Hoang tried to explain that they knew nothing about the burglary. Also, Lu and Hoang said they would do anything Changyaleket wanted and would help him find the drugs and money. Changyaleket then said "too late" and shot Hoang in the head.

Nguyen also testified that Changyaleket instructed him to pull Hoang out of the car, after which he pulled Hoang about fifteen to twenty feet into the cornfield. When Nguyen returned to the car, Changyaleket told him to stop at a store to get paper towels to clean the car. During the drive, Changyaleket told Lu that he had ten days to find Changyaleket's "stuff" or he would kill Lu and his family. Meanwhile, Nguyen testified that he did not see Hoang make any movement before the gun went off and that there was not a struggle before Changyaleket fired the gun.

Changyaleket also testified at trial. Specifically, Changyaleket testified to essentially the same set of facts except that he did not threaten Lu or Hoang. Changyaleket further testified that he did not voluntarily pull the trigger of the gun, but that it felt like someone hit is his arm and the gun went off. Also, Changyaleket testified that he stayed in various hotels after the shooting, dyed his hair, and fled the jurisdiction for a substantial period of time after the shooting in an effort to evade the police.

## II.    Procedural Background

After a bench trial in the Circuit Court of Cook County, the trial judge convicted Changyaleket of first degree murder and concealment of a homicidal death and sentenced him to concurrent terms of forty-five years' and five years' imprisonment. (R. 12-1, Resp.'s Rule 5 Exs., Ex. E ). On direct appeal, Changyaleket challenged the sufficiency of the evidence on both counts and argued that the trial court should have dismissed the indictment because a police detective testified falsely before the grand jury. (Ex. A, C.) After the Illinois Appellate Court affirmed his convictions on October 29, 2003, Changyaleket filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois arguing that the false grand jury testimony required the dismissal of the indictment as to his murder charge. (Ex. F). The Supreme Court of Illinois

4

denied his PLA on May 26, 2004. Changyaleket did not file a petition for a writ of certiorari in the United States Supreme Court. (Ex. G.)

In March 2005, Changyaleket filed a petition for post-conviction relief pursuant to 725 ILCS 5/122-1, *et seq*., that the trial court dismissed as frivolous. (Exs. I, H.) On July 3, 2006, Changyaleket appealed the trial court's dismissal bringing claims of ineffective assistance of counsel based on counsel's advice regarding Changyaleket's jury waiver and the denial of his right to an impartial jury. (Ex. H.) The Illinois Appellate Court affirmed the trial court's dismissal on January 31, 2007. (Ex. K) Changyaleket did not file a post-conviction PLA to the Supreme Court of Illinois.

On March 27, 2007, Changyaleket filed the present pro se habeas petition pursuant to 28 U.S.C. § 2254(d)(1). An attorney made an appearance on behalf of Changyaleket on May 30, 2007, and also filed a motion for leave to file an amended petition that the Court granted. Later in the proceedings, the Court granted the attorney's motion to withdraw and granted Changyaleket's motion for appointment of counsel. Changyaleket's new counsel did not file an amended petition, but instead filed a reply brief in which counsel characterizes Changyaleket's habeas claims as follows: (1) ineffective assistance of trial counsel for failure to obtain an expert to rebut the State's forensic pathologist; (2) a due process violation as a result of perjurious testimony presented to the grand jury; (3) insufficiency of the evidence to support a conviction for concealment of a homicidal death; and (4) ineffective assistance of trial counsel regarding jury waiver. (R. 38-1, Reply, at 1.) Moreover, construing his pro se habeas petition liberally, *see Benders & Benders v. Bellows*, 515 F.3d 757, 767 (7th Cir. 2008), Changyaleket also brings a sufficiency of the evidence claim as to his murder conviction. (R. 1-1, Habeas Pet., at 5.)

5

## LEGAL STANDARDS

**I.      Habeas Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Calloway v. Montgomery,* 512 F.3d 940, 943 (7th Cir. 2008). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id*. at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law) (emphasis in original). To be considered objectively unreasonable, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Gilbert v. Merchant,* 488 F.3d 780, 790 (7th Cir. 2007) (quoting *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)). Put differently, to be reasonable, a state court's decision must be "at least minimally consistent

with facts and circumstances of the case." *Simpson v. Battaglia,* 458 F.3d 585, 592 (7th Cir. 2006).

## II. Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *Lieberman v. Thomas,* 505 F.3d 665, 669 (7th Cir. 2007). Specifically, a habeas petitioner must fully and fairly present his federal claims to the state courts before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Johnson v. Loftus,* 518 F.3d 453, 455 (7th Cir. 2008). Moreover, a "habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004); *see also Crockett v. Hulick,* 542 F.3d 1183, 1192 (7th Cir. 2008).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

### I. Perjured Grand Jury Testimony

The Court first addresses Changyaleket's habeas claim that he was denied due process as a result of perjurious grand jury testimony. Because Changyaleket brought this claim in his direct appeal to the Illinois Appellate Court and in his PLA to the Supreme Court of Illinois, he has not procedurally defaulted this claim. *See Lieberman,* 505 F.3d at 670-71; *Lewis*, 390 F.3d at 1026. On direct appeal, Changyaleket argued that a police detective committed perjury when he testified that Hoang was shot in the back of the head rather than in the forehead. The Illinois Appellate Court rejected Changyaleket's argument that the detective's testimony was perjured, although the appellate court acknowledged that the testimony was inaccurate. *See People v. Changyaleket,* No. 1-02-2112, at 8-11.

In support of his due process claim, Changyaleket cites a Seventh Circuit decision for the proposition that the knowing and intentional use of perjured testimony by prosecuting authorities is a denial of due process of law. *See Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1122 (7th Cir. 1991) (citing *United States v. Jakalski*, 237 F.2d 503, 504-05 (7th Cir. 1956)). Changyaleket's reliance on the *Shore* decision cannot be the basis for a finding that the Illinois Appellate Court's decision involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *See Sweeney v. Carter,* 361 F.3d 327, 333-34 (7th Cir. 2004); *see also White v. Indiana Parole Bd.,* 266 F.3d 759, 763 (7th Cir. 2001) ("Only the [Supreme] Court's own decisions, and not glosses applied by other tribunals, may be enforced on collateral review."). In other words, on federal habeas review, "decisions of courts other than the Supreme Court must be disregarded." *White,* 266 F.3d at 763.

Meanwhile, the parties do not direct the Court's attention to clearly established federal law set forth by the Supreme Court supporting Changyaleket's argument, and after thoroughly researching this issue, the Court could not find any Supreme Court authority supporting Changyaleket's claim that a prosecutor's knowing presentation of false testimony to a grand jury violates a criminal defendant's constitutional rights. *See Anderson v. Secretary for Dep't of Corr.,* 462 F.3d 1319, 1327 (11th Cir. 2006) ("There is no Supreme Court precedent clearly establishing a constitutional rule that, irrespective of prosecutorial misconduct, an indictment must be dismissed because of perjured grand jury testimony where the perjurious testimony is not repeated before the petit jury which convicts."). Finally, there is no federal constitutional right to be indicted by a grand jury in state court prosecutions in the first instance. *See Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Bae v. Peters,* 950 F.2d 469, 477 (7th Cir. 1991). As such, Changyaleket's habeas claim based on the perjured grand jury testimony must fail because there is no clearly established Supreme Court precedent supporting his claim. *See* 28 U.S.C. § 2254(d)(1).

## II.     Ineffective Assistance of Counsel Claims

Next, Changyaleket brings two claims based on his trial counsel's ineffective assistance of counsel. The clearly established Supreme Court law that applies to Changyaleket's ineffective assistance of counsel claim is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally ineffective assistance of counsel, Changyaleket must show that (1) his attorneys' performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at

9

694 ("a reasonable probability is a probability sufficient to undermine confidence in the outcome"); *Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008).

### A. Failure to Obtain Expert to Rebut State's Forensic Pathologist

First, Changyaleket argues that his trial counsel was constitutionally ineffective for failing to obtain an expert to rebut the state's forensic pathologist at trial. Although Changyaleket made this argument in his petition for post-conviction relief pursuant to 725 ILCS 5/122-1, Changyaleket did not present this argument to the Illinois Appellate Court on post-conviction appeal nor did he present it in a PLA to the Supreme Court of Illinois. Because Changyaleket failed to submit the operative facts and controlling legal principles of this constitutional claim through one full round of state court review, Changyaleket has procedurally defaulted this claim. *See Crockett,* 542 F.3d at 1192; *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

Changyaleket argues that he can establish cause and prejudice for this procedural default, namely, that his post-conviction appellate attorney was ineffective for failing to raise this issue on post-conviction appeal and to the Supreme Court of Illinois in a PLA. *See Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see also Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) ("Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside procedural default."). "When a habeas petitioner seeks to excuse a procedural default through an ineffective-assistance claim, the 'cause' and 'prejudice' test from *Wainwright* is replaced by the similar test for ineffective assistance set out in *Strickland.*" *Wrinkles,* 537 F.3d at 812.

Not only does Changyaleket fail to argue that his post-conviction counsel's conduct

10

amounted to ineffective assistance of counsel under the *Strickland* standard, habeas petitioners do not have the Sixth Amendment right to counsel in post-conviction proceedings. *See Smith v. Battaglia,* 415 F.3d 649, 653 (7th Cir. 2005). Nevertheless, because Changyaleket has failed to argue or establish that his post-conviction appellate counsel was constitutionally ineffective under *Strickland*, he has failed to establish cause and prejudice for his procedural default. *See Wrinkles,* 537 F.3d at 823. The Court is thus procedurally barred from considering the merits of this claim. *See Williams v. Buss,* 538 F.3d 683, 686 (7th Cir. 2008) ("an unexcused procedural default ends the case").

      **B.**      **Jury Waiver**

Changyaleket also argues that his trial counsel was constitutionally ineffective because counsel misled him into waiving his right to a jury trial. Changyaleket brought this claim in his petition for post-conviction relief pursuant to 725 ILCS 5/122-1 and presented this argument to the Illinois Appellate Court on post-conviction appeal. Changyaleket, however, did not present this argument to the Supreme Court of Illinois in a PLA. As the United States Supreme Court made clear in *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), a full round of state court review includes the Supreme Court of Illinois' discretionary review of a petition for leave to appeal. *See Crockett,* 542 F.3d at 1192.

Again, Changyaleket maintains that his post-conviction appellate counsel's error should except his procedural default. Changyaleket's argument fails for the same reason as discussed above – he has failed to argue, let alone establish, that appellate counsel's conduct amounted to ineffective assistance of counsel under the *Strickland* standard. *See Wrinkles,* 537 F.3d at 823.

**III.**      **Sufficiency of the Evidence Claims**

In addition, Changyaleket brings claims based on the sufficiency of the evidence supporting his criminal convictions. The clearly established Supreme Court law that applies to these habeas claim is set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* holds that due process is satisfied if – when viewing the evidence in the light most favorable to the prosecution – "***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original); *United States v. Calimlim,* 538 F.3d 706, 714 (7th Cir. 2008). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319.

Changyaleket challenged the sufficiency of the evidence supporting his first degree murder conviction and his concealment of a homicidal death conviction on direct appeal to the Illinois Appellate Court. In his PLA to the Supreme Court of Illinois, however, Changyaleket did not present his sufficiency of the evidence claims. Because Changyaleket failed to submit the operative facts and controlling legal principles of his sufficiency of the evidence claims through one full round of state court review, he has procedurally defaulted these claims. *See Crockett,* 542 F.3d at 1192.

Again, Changyaleket argues that he can establish cause for this procedural default through his appellate attorney's ineffective assistance of counsel. *See Coleman,* 501 U.S. at 750; *Wainwright,* 433 U.S. at 90. As discussed, because Changyaleket seeks to excuse his procedural default through an ineffective assistance of counsel claim, he must establish that appellate counsel was ineffective under *Strickland. See Wrinkles,* 537 F.3d at 812. Changyaleket has

12

failed to make any arguments that his appellate counsel was ineffective under the standards set forth in *Strickland*. In fact, Changyaleket's entire argument concerning appellate counsel's ineffective assistance consists of the following:

> Here, but for his appellate counsel's failure to specifically include all of the claims raised on appeal, including insufficiency of the evidence to support a conviction for the murder and concealment of a homicidal death, the Illinois Supreme Court would have had an opportunity to address his claim.

(R. 38-1, Reply Brief, at 10.) Without more, Changyaleket has failed to establish an exception to his procedurally defaulted sufficiency of the evidence claims, and thus the Court is barred from determining the these claims on the merits. *See Williams,* 538 F.3d at 686; *Wrinkles,* 537 F.3d at 823.

## **CONCLUSION**

For these reasons, the Court denies Changyaleket's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).

Dated: December 8, 2008

                **ENTERED**

                *[signature]*
                **AMY J. ST. EVE**
                **United States District Judge**